## CLANCY v. TROY BELTING & SUPPLY CO.

(Circuit Court, N. D. New York. March 19, 1907.)

1. PATENTS—ASSIGNMENT—VALIDITY.

It is not essential to the validity of an assignment of a patent that it should be acknowledged, where the genuineness of the assignor's signature is proved.

2. SAME—LICENSE.

An oral agreement by the owner of a patent, made without consideration, that he would not trouble an infringer so long as the latter confined himself to the use of a certain metal in making the infringing device, affords no protection to the infringer after he has commenced to use a different metal.

3. SAME—INFRINGEMENT—HOSE CLAMP.

The Redfield patent, No. 480,515, for a hose clamp, construed, and held infringed.

In Equity. Suit to restrain alleged infringement of United States letters patent to Lewis H. Redfield, assignor of one-half thereof to John R. Clancy, No. 480,515, dated August 9, 1892, for "hose clamp," and for an accounting.

Alfred Wilkinson, for complainant.

Alexander & Dowell (Arthur E. Dowell, of counsel), for defendant.

RAY, District Judge. The complainant is a manufacturer of hose clamps; the defendant, a corporation of the state of New York. The defendant sells the alleged infringing devices. Defendant says it has five defenses, all complete: First, complainant has not shown complete title to the patent in suit and cannot alone maintain the action; second, if he has become such owner of the patent, he has shown no infringing act by defendant since he became such owner; third, the manufacturer of the alleged infringing devices was authorized and licensed by complainant to make and sell them, and that, as defendant is a mere seller, it is protected by such license consent and authority; fourth, that the alleged infringing devices are made under another patent, not owned by complainant, which is valid, and there is no infringement by defendant; fifth, the complainant is equitably estopped to maintain this suit by reason of the consent and agreement aforesaid and by reason of laches.

The defendant in open court on the argument concedes the validity of complainant's patent, but says it must be given a narrow construction. The claims, two in number, read as follows:

"(1) As an improved article of manufacture, a hose-clamp band formed in one piece of sheet metal, perforated in its ends, and having longitudinal slits extending from a point some distance from the end of the band toward the center of its length and meeting in a transverse slit; the main portion of said band being bent circular shape, the perforated end portions being bent radially outward, and the free end of the slitted portion being bent back and lapped onto the inner side of the opposite end of the main portion, substantially as described and shown.

"(2) The band, C, composed of sheet metal and having the finger, c, formed integral therewith and bent into the outwardly-projecting loop, c', and folded with its free end back onto the inner side of the band and lapped onto the opposite end of the main portion of the band, substantially as described and shown."

This improved article of manufacture consists, when complete and bent into shape, of a band of circular sheet metal in one piece, which may be of any suitable size, but which circular band is not integral; that is, it has two ends each of which is perforated. This band has in the making longitudinal slits, each extending from a point some distance from the end towards the center of its length, where it meets a transverse or cross slit. This portion produced by the slits forms a sort of tongue or finger, which is bent back and towards the mouth or opening of the circular band, and spans or bridges it, and the free end, the end not attached to the band, is lapped onto the inner side of the opposite end of the main portion; that is, lapped onto the inner side of the end of the band to which it is not attached, or, more properly speaking, perhaps, the end of which it is not an integral part. This slitting and bending away of the tongue leaves slots, one

or more, as the case may be, in the band, which take hold of or bite the hose, when in actual use and closed down, and prevent slipping, and make its grip of the hose more firm and secure. This particular feature is covered by Redfield's prior patents. There may be one or more fingers or tongues formed in the same way; one or two on each side, depending on the size of the clamp. The perforated ends of the clamp are bent upwardly or outwardly to form ears or flanges. The perforations therein receive a bolt with a head and nut. This head engages with one ear, the nut with the other, and the nut is prevented from turning and coming off by means of flanges on the ear which bear on it. By turning the bolt in the nut the two ears are drawn towards each other, and the diameter of the space within the band lessened, so that it is tightened around the hose; and as the opening between the ears is spanned by the tongue or "finger," the pressure on the hose is uniform its entire circumference, and there is no buckling of any part of the hose, and no leak or cutting into the hose. This tongue or finger in such a device or clamp, formed in one piece (aside from the bolt and nut), is new and novel in the art, and durable, and has great practical utility. It is used by thousands and has met with large sales. It cheapened production. It discloses patentable novelty.

The infringing device is an exact duplication, a Chinese copy, except it has more elaborate ears, but no elaboration that adds to the utility of the device, and is so bent as to form, at the place where the end of the tongue or finger is "lapped onto the inner side of the solid portions of the opposite end of the band," a sort of depression, described in a subsequent patent (Sherman, No. 499,760, dated June 20, 1893), as "channels located in its solid portion at the ends of said opening." The only possible office or function of this channel is to allow the tongue or finger to lie therein and make the grasp of the clamp more perfect and uniform. It would occur to any one to provide this, and adding it did not constitute patentable invention; nor does its addition to defendant's device avoid infringement. The infringing device would have anticipated if earlier, and it infringes being later. The device of Sherman patent is much better described than that of the patent in suit; but the invention of the patent in suit is so described, illustrated, and claimed that it is easily understood and can readily be made. Being made of sheet metal, it is tough, not liable to break, and possesses resiliency. The specifications say:

"My present invention relates specially to the formation of the fingers which span the space between the coupling-ears of the clamp to prevent the hose from being buckled or crimped up and caught between said ears in the operation of tightening the clamp on the hose.

"The object of this invention is to form said fingers on the band in a simple and inexpensive manner and with a minimum consumption of material; and to that end the invention consists in the improved construction of the hose-clamp band, as hereinafter fully described and specifically set forth in claims."

In the prior art we find certain cast-iron clamps, with similar tongues or fingers, having similar ears; but these were more cumbersome, and did not have the slits or the slots. They were more expensive, and were not made from or formed in "one piece, stamped out of suitable

sheet metal by means of suitable dies," as is the device of the patent in suit. This device combines great strength with little weight and great elasticity, ease and simplicity of construction, and saving of material.

As to title, and the right of the complainant to maintain this action, the facts are as follows: (1) The complainant owned one-half the patent when it issued. (2) Redfield, who owned the other half, September 27, 1892, mortgaged it to Clancy, and this was recorded in the Patent Office, and there is no proof it was ever paid. It has not been satisfied or canceled. Thereafter Redfield assigned his one-half interest, which was subject to the mortgage held by Clancy, to one Burke. Burke died, and then his interest was duly transferred to one Truesdell, and by him to complainant. Complainant paid nearly $4,000 to perfect his title. However, prior to perfecting his title, Clancy brought suit for the infringement against this defendant; but the defect of title, if it was, being pleaded, he discontinued the suit on his own motion, and then perfected his title and brought this action.

It is said by defendant that the execution of the assignment made by Redfield is not duly proved; it not being acknowledged. But the signature of Redfield thereto was duly proved by the witness Truesdell, who said he was familiar with Redfield's signature, and in his opinion the signatures of Redfield to Exhibits D, E, F, and G are his genuine signatures. These are the exhibits alleged to be not proved. No objection was made to this proof. Perfect title in complainant prior to the bringing of this suit is shown. That the suits referred to were not dismissed on the merits, but on complainant's own motion, appears from the record and other oral evidence not objected to.

The defense of an oral license agreement and consent rests on the following evidence given by the complainant:

"A. In 1896 Mr. Redfield and myself commenced a suit for infringement of this patent against the H. B. Sherman Manufacturing Company, of Battle Creek, Mich. Mr. Harrison Hoyt was our attorney. Mr. Sherman and Mr. Cox came on here to Syracuse to see us, and discussed at some length entering into an agreement. There was an agreement drawn, but upon further consideration we considered it unwise to sign it. Some time after Mr. Sherman called to see me, and, as I thought, we had made our position pretty clear by bringing suit on this patent, and considered that he, by his position, had recognized the validity of our patent. I wasn't very anxious for litigation or trouble, preferring to get along peacefully with our competitors if we could. I told Mr. Sherman that, as long as he confined himself to brass clamps, I would not bother him, believing that I could do pretty well on steel, although at this time almost the entire demand was for a brass clamp; but I had a good deal of confidence that steel would win out in time. Sherman agreed to that; but he never gave me a cent, or any other consideration, and I considered that we merely had a gentlemen's understanding. We stuck at the steel clamps, but it was pretty up-hill work for several years; but about 1900 and 1901 we had worked up a very nice business. This was all new business, worked up at a great deal of trouble, labor, and expense, all based on the patent in suit. After we had demonstrated that there was a field for steel clamps, we understood that Mr. Sherman had gone back on his word and was selling a steel clamp. We first heard of this, I think, about 1903. My attorney, Mr. Hoyt, has been dead for several years."

Clancy strictly complied with this agreement, but defendant did not. After a time he commenced making and selling steel hose clamps,

and hence this suit. This is proved by ample evidence. Clearly this oral agreement not to bother Sherman so long as he confined himself to brass clamps (complainant's being of steel, sheet metal, not brass) did not bind Clancy after Sherman disregarded and violated it by making and selling steel clamps, or clamps made of sheet metal, not brass, as he did. Nor did it thereafter protect this defendant, or others who were selling the steel clamps made by Sherman in violation of such agreement. The defendant was not selling in reliance on such an agreement. There is no equitable estoppel; quite the contrary. Nor is there any laches. So long as Sherman observed the agreement, and abided by it, Clancy would have offended decency and good morals, had he repudiated it and sued for infringement. He did what good morals required him to do, and nothing more. The agreement had in its terms its own limitations. "So long as Sherman confined himself to brass clamps, he was not to be molested."

I should say here that defendant dumped into the record several patents, presumably to show the prior art and affect and limit the construction to be given complainant's patent. These are not accompanied by a word of explanation, and within the authorities will not be considered.

Complainant's patent was allowed as claimed, nothing being cited against it, and it was not limited by any action or concessions there. It is entitled to as broad a construction as the language of the claims and the specifications warrant. There is evidence that defendant has continued to infringe down to the commencement of this action. It was cataloguing and offering the offending clamps for sale.

I do not think any defense is made out, and there will be a decree for complainant, with costs.