## DE FOREST RADIO TELEPHONE & TELEGRAPH CO. v. RADIO CORPORATION OF AMERICA.

(District Court, D. Delaware. November 12, 1925.)

No. 553.

**I. Patents ⟨⟩206—"License" defined.**

A "license" is a permission to make, use, or sell articles embodying invention, or is a transfer which does not affect the monopoly of the patent, otherwise than by estopping licensor from exercising its prohibitory powers in derogation of privileges conferred on licensee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, License.]

**2. Patents ⟨⟩210—License may be express or implied from acts creating estoppel.**

A license may be express, and conferred by written instrument or parol, or be implied from circumstances operating to estop owner from denying rights of apparent licensee.

**3. Patents ⟨⟩210—License may be implied, whether conduct on which it is based is that of owner or one acting under him.**

A license may be implied, without regard to whether conduct leading to apparent licensee's use of patent is that of owner or of one who, through owner, has exclusive right to grant license.

**4. Patents ⟨⟩210—Written agreements and course of dealing thereunder held to establish implied license to sell patented product.**

Where company, after acquiring right to use and to grant licenses to use particular patent, entered into agreement with another company whereby each acquired rights to use patents of the other, and with the other's consent to grant sublicenses, and on the same day joined in quadrupartite agreement whereby rights acquired by one company were extended to defendant, defendant *held* to have an implied license to sell patented articles manufactured by another company.

In Equity. Patent infringement suit by the De Forest Radio Telephone & Telegraph Company against the Radio Corporation of America. Bill of complaint dismissed.

See, also, 3 F.(2d) 847; 4 F.(2d) 134.

Thomas G. Haight, of Jersey City, N. J., Samuel E. Darby, Jr., of New York City, and E. Ennalls Berl, of Wilmington, Del., for plaintiff.

John W. Davis, and Sheffield & Betts, all of New York City, and William G. Mahaffy, of Wilmington, Del., for defendant.

MORRIS, District Judge. Though this suit, instituted on the 26th day of September, 1924, by De Forest Radio Telephone & Telegraph Company against Radio Corporation of America, is an infringement suit, based upon patent No. 879,532, covering radio vacuum tubes, and though the usual relief—injunction and accounting—is sought, yet the underlying or subordinate issues are not of the most usual character, for the defendant concedes the validity of the patent, and that it has been selling large numbers of tubes embodying the invention thereof, and defends upon the grounds of want of title in the plaintiff, laches, estoppel, and noninfringement by reason of licenses.

The differences between the parties have their origin in an agreement, made March 16, 1917, between the plaintiff and the Western Electric Company. By that agreement the plaintiff, conceded to have been then the owner of the patent, subject only to certain rights theretofore transferred to one Sidney S. Meyers, conferred certain other rights upon the Western Company, by granting to that

company "a license * * * to make, use, install, operate, and lease, and to sell or otherwise dispose of to others for sale, installation, and operation, apparatus and systems embodying or made or operating in accordance with the" invention of the patent in suit. The license granted was for all transferable rights of the plaintiff of any kind or nature whatsoever in the patent in suit, except the rights therein expressly reserved to itself by the plaintiff. After setting out the rights reserved to the plaintiff, the agreement provided that the parties to the agreement "may, respectively, institute and conduct suits against others for infringement of any of said patents within the fields in which it possesses rights, but all such suits shall be conducted at the expense of the party bringing them, which party shall be entitled to retain any judgment recovered in any such suits." It was further provided that the Western Company, its successors and assigns, might assign in whole or in part the rights granted to it by that agreement, "or grant licenses to various persons, firms, or corporations for the several uses to which the inventions are applicable."

The American Telephone & Telegraph Company acquired by assignment all the rights of Meyers and of the Western Company in and to the patent in suit. Subsequently, on July 1, 1920, the Telephone Company, as it was empowered to do, granted to the General Electric Company an "exclusive license to make, use, lease, and sell all wireless telephone apparatus for amateur purposes." The General Electric Company, operating under this license, manufactured tubes for amateur purposes which were subsequently sold by the defendant. The plaintiff concedes that such tubes have been lawfully sold by the defendant, for the reason, as I understand plaintiff's attitude, that any one has a right to resell that which a licensee has a right to manufacture and sell. The defendant, however, has also sold, under circumstances to be hereinafter stated, like tubes manufactured by the Westinghouse Electric & Manufacturing Company and by the Westinghouse Lamp Company, and it is the sale of these tubes that gives rise to the real problems and issues of this case.

The defense by way of justification with respect to the sale of the Westinghouse tubes is twofold: First, that the defendant was licensed to sell the tubes so made; and, second, that both the Westinghouse Companies were licensed to make and sell the tubes, and that hence the resale of the tubes by the defendant was not illegal. As the former of these contentions, first advanced at the final hearing, is, like the remaining contentions of the defendant, in bar of the suit, and as it has as well the added merit of going directly to the actual and legal rectitude of defendant's acts, without calling for a determination, in the absence of the Westinghouse Companies, of the right of those companies to manufacture tubes embodying the invention of the patent in suit, it seems fitting that the issue of license or no license to the defendant should be first determined.

[1] The proper solution of that problem requires an understanding of what a license is, and how it may be acquired, as well as a consideration of the evidence bearing upon that issue. Since there is here no contention that the defendant has greater rights than those of a licensee, the term "license" may here be defined as a permission to make, use and/or sell articles embodying the invention, or a transfer which does not affect the monopoly of the patent otherwise than by estopping the licensor from exercising its prohibitory powers in derogation of the privileges conferred by him upon the licensee. Robinson on Patents, § 806.

[2] A license may be express or implied. An express license may be conferred by a written instrument or by parol. Robinson on Patents, § 809. "An implied license may arise out of any circumstances which operate as an estoppel on the owner of the patent to prevent him from denying the rights claimed by the apparent licensee. * * * Any conduct by which the owner of the patent induces the person who employs the invention to place himself in a situation where he must suffer injury, unless his right to practice the invention is conceded, will be regarded as implying such a right, and as estopping the owner of the patent from asserting his prohibitory powers in its defeat." Robinson on Patents, § 834.

[3] It would seem manifest that a license must be implied from like circumstances, without regard to whether the conduct leading to the employment of the invention by another is that of the owner, or of one who, through the acts or agreements of the owner, has the exclusive right to grant licenses under the patent. Applying these principles to the case at bar, it would seem obviously to follow that, in the light of the contract of March 16, 1917, by which the plaintiff, as owner of the patent, conferred mediately upon the American Telephone & Telegraph Company the exclusive right to grant licenses under the patent, this suit may not

be successfully maintained by the plaintiff, even if it has the legal title to the patent, if the American Telephone & Telegraph Company has conferred, by estoppel or otherwise, a license upon the defendant to sell tubes made by the Westinghouse Companies. [4] Has it done so? Four documents, known respectively as A, B, C, and E, bear materially upon this issue. By the first (A), made on November 20, 1919, between General Electric Company and the defendant, the former purported to grant to the latter "an exclusive, divisible license to use and sell * * * apparatus purchased from the General Company or with its written consent * * * for radio purposes," under patents, rights, or licenses then or subsequently owned by the General Electric Company. The latter company then had no rights under the patent in suit. But on July 1, 1920, the American Telephone & Telegraph Company, the owner of many patents and of the right to "grant licenses to various persons, firms, or corporations" under the patent in suit (agreement A), entered into a cross-license agreement (B) with the General Electric Company, likewise the owner of many patents, wherein its grant to the latter included an "exclusive license to make, use, lease, and sell all wireless telephone apparatus for amateur purposes." It was therein further provided that " * * * each party hereto may assign or grant sublicenses under any of the rights granted hereunder, provided that in each instance the assent of the other party is first obtained."

On the same day, July 1, 1920, a quadrupartite agreement (C) was entered into between the American Telephone & Telegraph Company, the General Electric Company, the defendant, and the Western Electric Company, wherein, after reciting the cross-license agreement (B) between the American Telephone & Telegraph Company and the General Electric Company, that the General Electric Company desired to extend its rights thereunder to the Radio Corporation of America, defendant herein, pursuant to the provisions of the agreement of November 20, 1919 (A), that the American Telephone & Telegraph Company desired to extend its rights thereunder to the Western Electric Company pursuant to certain specified agreements, that the Radio Corporation of America and the Western Electric Company desired to obtain such rights, and, lastly, that such rights might be extended only with the assent of both parties to that agreement (B), it was provided that "the General Company may extend to the Radio Company, and the

Telephone Company may extend to the Western Company (pursuant to the abovementioned agreements of November 20, 1919, * * * or otherwise), any of the said rights reserved and acquired by each, respectively, under this present agreement and under said agreement of July 1, 1920. * * * " By the same agreement (C) the defendant, the Radio Corporation of America, granted certain rights to the American Telephone & Telegraph Company.

The fourth agreement (E), a tripartite one, was made June 30, 1921, between the defendant, the General Electric Company, and the Westinghouse Electric & Manufacturing Company. The last two companies are therein collectively referred to as the "manufacturing companies." Among other things, the agreement provides: " * * * The manufacturing companies have agreed that the licenses are extended as hereinafter specified to enable the Westinghouse Company to manufacture for the Radio Corporation under patents of the General Company and of the Radio Corporation, and to enable the General Company to manufacture for the Radio Corporation under the patents of the Westinghouse Company, * * * to such an extent that the Radio Corporation, in the manner and to the extent herein provided, may purchase from time to time from the General Company 60 per cent. and from the Westinghouse Company 40 per cent. of all radio devices covered by patents, rights under which are granted or agreed to be granted in either agreement A or * * * (provided, however, that the right of the Radio Corporation to use or dispose of said devices arises from the grants of agreements A * * * )." It was further provided that "Westinghouse Company," as used in that agreement (E), included "all controlled companies." The evidence discloses that the Westinghouse Lamp Company is controlled through stock ownership by the Westinghouse Electric & Manufacturing Company. Tubes made by the Westinghouse Companies were sold by the defendant after, but not before, the consummation of agreement E.

Upon an analysis of these agreements it is found that a grant by the General Electric Company to the defendant of a license to sell tubes purchased by the defendant with the written consent of the General Electric Company was expressly assented to or ratified by the American Telephone & Telegraph Company upon a consideration moving from the defendant, and that thereafter the General Electric Company gave its written con-

sent to the defendant to purchase tubes from the Westinghouse Electric & Manufacturing Company and its controlled companies, and to sell the tubes so purchased. It was in the exercise of the rights apparently so conferred upon it that the alleged infringing acts of the defendant were committed.

The plaintiff contends, however, that the title to the patent was and is in the plaintiff, that the American Telephone & Telegraph Company was without power to authorize its licensee, the General Electric Company, to grant sublicenses, and that the American Telephone & Telegraph Company, by its grant to the General Electric Company of an exclusive license to make, use, lease, and sell, exhausted its licensable rights, and that, consequently, no right to sell Westinghouse tubes was acquired by the defendant through these agreements. The defendant meets this contention of the plaintiff with a challenge of the soundness both of its premises and of its conclusion. It asserts, not only that the premises are not supported by the record, but, as well, that, even if the premises are sound, they are not sufficient to sustain the conclusion which the plaintiff draws from them.

For the purposes of this discussion, I think the soundness of the premises may be assumed. The real question is whether the conclusion of plaintiff follows. As I view the matter, the premises or underlying contentions do establish that neither the American Telephone & Telegraph Company nor the General Electric Company, acting alone, had power to confer a license upon the defendant; but they do not disclose a lack of power in those two companies by concert of action to grant such license. On the contrary, it is obvious that the two companies properly co-operating could have conferred upon the defendant all or any portion of the rights which were granted by the American Telephone & Telegraph Company to the General Electric Company. The procedure that one might ordinarily expect to find employed for that purpose would probably consist of a surrender of the desired portion of its licensed rights by the General Electric Company to the American Telephone & Telegraph Company, and a subsequent grant of those rights by the latter company to the defendant.

But any procedure by which the necessary parties co-operate with intent to produce a consequence or result capable of being brought about by them is, at least in equity, sufficient and adequate, for equity regards the substance and intent of the transaction rather than its form. That the American Telephone & Telegraph Company and the General Electric Company purported, attempted, and intended, for a consideration paid, to confer upon the defendant permission to sell the Westinghouse tubes sold by it, seems not open to question. Moreover, the American Telephone & Telegraph Company thereby caused the defendant to alter its position, both by granting certain of its rights to the American Telephone & Telegraph Company in consideration of the rights received, and by selling tubes made by the Westinghouse Companies. The American Telephone & Telegraph Company accepted the rights so transferred and the benefits accruing therefrom.

Still again, the American Telephone & Telegraph Company has by its uniform conduct acquiesced in the sale of the Westinghouse tubes by the defendant. The result, as I see it, is that at the time this suit was instituted the American Telephone & Telegraph Company was barred by ratification, acquiescence, and estoppel from asserting that the defendant was without right to sell the Westinghouse tubes. Consequently the law implies a license from the American Telephone & Telegraph Company to the defendant to sell the Westinghouse tubes. Being a licensee, and having confined its operations within the scope of its license, the defendant is not an infringer of the patent in suit, and is not of that class of persons against whom the plaintiff, even if it is the owner of the legal title to the patent, may, by virtue of the agreement of March 16, 1917, institute and conduct suits.

For the reasons stated, the bill of complaint must be dismissed.