**GATE–WAY, Inc. v. HILLGREN et al.**

Civil Action No. 6778.

United States District Court
S. D. California
Central Division.

Feb. 11, 1949.

Fred H. Miller, of Los Angeles, Colo., for plaintiff.

Hamer H. Jamieson, of Los Angeles, Cal., for defendants.

J. F. T. O'CONNOR, Judge.

The plaintiff herein, a corporation organized and existing under the laws of the State of California, has instituted this suit against both defendants herein for alleged violation of Letters Patent, No. 2,326,646, or more particularly Figure 1 thereof [1] (Exhibit 10 in case); and also for a declaratory judgment under Sec. 400 [now §§ 2201, 2202] of Title 28 U.S.C.A. and for an accounting, against Carl Hillgren. The plaintiff likewise prays for costs of suit and for attorney's fees against both defendants.

The plaintiff alleges exclusive jurisdiction to exist in this court against both defendants, primarily by reason of paragraph 5 of Sec. 371 of Title 28 U.S.C.A.[1] regardless of a lack of diversity of citizenship of the parties.

Counsel have stipulated that both defendants are residents within the Southern Judicial District of California (Stipulation of Facts), which the court construes to mean citizens or domiciliaries of California.

James Hillgren contends, inter alia, that the suit against him should be dismissed for lack of diversity of citizenship under Sec. 41 of Title 28 U.S.C.A., Sec. 1332 of new Title 28 U.S.C.A., infra, in that plaintiff, the plaintiff's assignors and he are all citizens of the State of California; and Carl Hillgren, while not denying the jurisdiction

---

[1] Sec. 371 of Title 28 U.S.C.A. "Exclusive jurisdiction of United States courts. The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states: * * * Fifth. Of all cases arising under the patent-right or copyright laws of the United States."

Sec. 1338 of new title 28 U.S.C.A. "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

of this court to try this suit under the patent laws of the United States, Sec. 371 of Title 28 U.S.C.A., Sec. 1338 of new Title 28 U.S.C.A., supra, contends, inter alia, that he has not infringed the patent in suit, or more specifically Figure 1 of the said patent, by reason of his acquisition of a shop right therein, and also of an oral license therein granted to him by his brother, James Hillgren, on June 2, 1942, prior to the assignment of the patent in suit by the said James Hillgren to the assignors of the plaintiff corporation on May 9, 1945, and, therefore, that the plaintiff's assignors bought the patent in suit from James Hillgren subject to these rights in the defendant, Carl Hillgren.

It appears that, prior to 1938, James Hillgren and Carl Hillgren were engaged in the business of manufacturing locks and doorknobs, and that, in the latter part of 1938, James Hillgren, while receiving a salary from the Hillgren Manufacturing Company, and while working there, conceived the idea for the doorknob which is the subject of this litigation. Carl Hillgren contends that a shopright was created in favor of the company and that the company operated under an oral license from James Hillgren until June 2, 1942, when he (Carl Hillgren) bought the company, including the shopright and the oral license to manufacture the device shown as Figure 1 of the patent in suit. This purchase was effected by an oral agreement, but there was a bill of sale in writing transferring the machinery, dies, etc. which had been and could only be used to manufacture the device shown in Figure 1 of the patent in suit, namely United States Letters Patent No. 2,236,646.

Carl Hillgren paid $20,000 for this license and this equipment to James Hillgren in June of 1942, and Carl Hillgren contends that he has owned the license to manufacture the device shown in Figure 1 of said patent, and the dies and machinery and business ever since; and at the time of the purchase it was agreed between the brothers, Carl and James Hillgren, that James Hillgren should retain the right to manufacture the device shown in Figure 3 of the patent in suit, and that Carl Hillgren could not manufacture that device and was not licensed to do so.

James Hillgren testified at the trial that when the partnership was dissolved between him and his brother they agreed that he (James) would retain Figure 3 in the patent, and that Carl should retain Figure 1. He further testified that Figure 1 and Figure 3 of the patent in suit (Exhibit 10) were separate and distinct.

About three years later, James Hillgren started a shop of his own at another location and began making preparations to market the device shown in Figure 3 of the patent in suit, as well as other devices since, according to his contention, the license to Carl Hillgren was non-exclusive, and James Hillgren had the right to manufacture anything he wanted to under the patent. It further appears that after he had worked at this a short time, and before he was ready to go on the market with his products, his wife decided he ought to retire on account of ill health, so he (James Hillgren) put an advertisement in the newspaper offering to sell the business. The advertisement was answered by Adolf Schoepe and Karl Reinhard. On August 10, 1943, United States Letters Patent No. 2,326,646, were issued to James Hillgren for an improvement in doorknobs. For reasons which will appear hereafter, it is not necesary for the court to discuss the construction of the patent nor adjudicate its validity or non-validity, but simply its alleged infringement by Carl Hillgren, and the court will assume that the patent is valid.

On May 8, 1945, an Agreement of Purchase and Sale was entered into between James J. Hillgren and Anna V. Hillgren, husband and wife, as sellers, and Adolf Schoepe and Karl Reinhard, as buyers, wherein the sellers agreed to sell and the buyers agreed to buy "the full and complete right, title and interest, free and clear of any liens, claims, encumbrances, easements and restrictions except only as (t)herein noted" in certain real estate, personal property and two patents, Nos. 2,326,646 and 2,348,737, respectively, for the total sum of $30,000, without their segregating the value of the property therein mentioned, and with the proviso that all rights and obligations thereunder should respectively inure to, and be obligatory upon, the successors and assigns of the parties thereto; that both part-

ies should have the right to transfer and assign any of such rights and obligations, except those that were in the nature of personal covenants, *provided, however, that such transfer or assignment should not release either party of the obligations so transferred or assigned without the written release of the other.* (Italics supplied.)

Further, the sellers represented that they had full and complete right to enter into this agreement, and that they had full and complete title to all property to be sold and transferred or assigned to the buyers.

This Agreement of Purchase and Sale did not, and was not intended to, pass legal title to the property involved therein for a deed, bill of sale and an assignment of the patents would subsequently be necessary to accomplish these results.

Except for this factual background the court is not concerned with any phase of this Agreement of Purchase and Sale, except as to letters patent No. 2,326,646, and particularly Figure 1 thereof.

In fulfillment of this Agreement of Purchase and Sale, so far as it pertained to the passing of the legal title to patent No. 2,326,646 to the Gateway Manufacturing Co., a partnership composed of Adolf Schoepe and Karl Reinhard, James Hillgren, not joined by his wife as assignor, assigned the said letters patent to the said copartnership [2] on May 9, 1945; and thereafter by another Assignment dated July 31, 1946, the said Adolf Schoepe and Karl Reinhard, doing business as Gateway Manufacturing Company, a copartnership, assigned said patent to Gate-Way Inc., the plaintiff herein, both of which assignments recited that they transferred all right, title, interest and estate of the assignor(s) to the assignee(s) and for the use and behoof of the legal representatives thereof.

The Gate-Way, Inc., a corporation, plaintiff herein, claims the benefits of the promise of Carl Hillgren and Anna V. Hillgren (husband and wife) in the Agreement of Purchase and Sale of May 8, 1945, between Carl Hillgren and Anna V. Hillgren (as sellers) and Adolf Schoepe and Karl Reinhard (as purchasers), by mesne assignments, as the assignee of the patent in suit in the assignment from Schoepe and Reinhard, doing business as Gateway Manufacturing Company, a copartnership, dated July 31, 1946, which copartnership prior thereto had been the assignee of the patent in suit in the assignment from James Hillgren of May 9, 1945.

While the Agreement of Purchase and Sale of May 8, 1945 nowhere indicates that title was to pass to any partnership, (and the court entertained considerable doubt that this was a partnership agreement, for the copartnership of the Gate-Way Manufacturing Company was not mentioned

---

[2] Liber G203 page 295. Assignment of Letters Patent;

Whereas, I, James Hillgren, residing at 2441 Broadway, Huntington Park, California, did obtain letters patent of the United States for an improvement in doorknobs, which letters patent are numbered 2,326,646, and bear date the 10th day of August, 1943, and

Whereas, I am now the sole owner of the said patent and of all rights under the same; and,

Whereas, Gateway Manufacturing Co., a copartnership consisting of Adolf Shoepe and Karl Reinhard, with its principal place of business located at 8213 Compton Avenue, County of Los Angeles, State of California, is desirous of acquiring the entire interest in the same:

Now, Therefore, To all whom it may concern, be it known that, for good and valuable consideration, the receipt of which is hereby acknowledged, I, the said James Hillgren, have sold, assigned and transferred, and by these presents, do sell, assign and transfer unto the said Gateway Manufacturing Co., the whole right, title and interest in and to the said improvement in doorknobs and in and to the letters patent therefor aforesaid; the same to be held and enjoyed by said Gateway Manufacturing Co. for its own use and behoof, and for the use and behoof of its legal representatives, to the full end of the term for which the said letters patent are, or may be, granted, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made.

In witness whereof I have hereunto set my hand and affixed my seal at the City of Los Angeles, County of Los Angeles, State of California, this 9th day of May, 1945.

James Hillgren.
(Witnesses and acknowledgment of Notary)

therein, but only the names of Adolf Schoepe and Karl Reinhard as the purchasers,) counsel for the plaintiff has throughout the case taken the position that this Agreement was entered into in behalf of the copartnership, and, as counsel for the defendants has indicated that this Agreement of Purchase and Sale of May 8, 1945, was the Agreement of the copartnership [3] the court will treat this admission as binding and hold that Adolf Schoepe and Karl Reinhard, as purchasers, were acting for the Gateway Manufacturing Company in said Agreement of May 8, 1945.

It would appear to this court that the plaintiff herein, by mesne assignments, would be entitled to enforce the promises of the Assignment of May 9, 1945, as well as the promises in the Agreement of Purchase and Sale of May 8, 1945, if the court felt it had jurisdiction over James Hillgren.[4] In other words, the plaintiff, Gate-Way, Inc., a corporation, obtained by assignment of July 31, 1946, all the right, title and interest which the Gateway Manufacturing Co., a copartnership, as assignor, had in the patent in suit, no more and no less; and this Assignment related back, not only to the Assignment of May 9, 1945, when James Hillgren assigned the patent to the Gateway Manufacturing Company, a copartnership consisting of Adolf Schoepe and Karl Reinhard, but to the Agreement of Purchase and Sale of May 8, 1945, the parties in the contemplation of the law, for

the reasons previously stated, being the same. (4).

## The Suit Against James Hillgren:

While the complaint alleges that the defendant, Carl Hillgren, has been and still is infringing said letters patent by making and selling doorknobs, giving this court jurisdiction over Carl Hillgren regardless of diversity of citizenship—nevertheless, the suit against James Hillgren is not for infringement of the patent in suit arising from his manufacture of doorknobs, i. e., as to Figure 1. The charge in the complaint in paragraph three of the prayer is as follows:

"That if this court declares that the said Carl Hillgren does have a valid and existing right to manufacture and sell the alleged infringing doorknobs (Exhibit 7), that this court declare that the said James Hillgren has not fulfilled the terms of the agreement of purchase and sale, Plaintiff's Exhibit 1 (the Agreement of Purchase and Sale dated May 8th, 1945), in that he has failed to deliver to the plaintiff's assignors said letters patent 'free and clear of any liens, claims, encumbrances, easements, and restrictions' 'and all rights under the same' and that this court enter a judgment against the said James Hillgren for damages for having failed to fulfill the terms of said purchase and sale agreement."

Counsel for the plaintiff, in further explanation of his position in joining James

---

[3] "The Gate-Way partnership had a contract with James (Hillgren) called exhibit 1" (said agreement). Statement of Attorney Jamieson in brief of James Hillgren, filed 7/16/48, page 6.

[4] An assignment of a patent to two persons named, "'and to their legal representatives,' to be held and enjoyed by them for their own use and behoof, 'and for the use and behoof of their legal representatives,'" is not a mere personal license to the persons named, but the words "'legal representatives'" mean "'assigns,' as well as 'executors and administrators.'" Hamilton v. Kingsbury, 11 Fed.Cas. pages 346, 347, No. 5,984.

In a contract concerning the use of a patented invention, and binding "'the parties and their legal representatives to the covenants and agreements of the contract,'" the term "legal representatives" includes not only administrators and exe-

cutors of the parties, but their "'successors and assignees in business and interest.'" Hammond v. Mason & Hamlin Organ Co., 92 U.S. 724, 726, 23 L.Ed. 767.

Code of Civ.Proc.Cal. Sec. 473, provides that an assignee or grantee is a "Legal representative" of the assignor or grantor in regard to the things assigned or granted. Abb. Law Dictionary says that "to represent a person" is to stand in his place, to act his part, exercise his right, or take his share. Brown v. Massey, 13 Okl. 670, 76 P. 226, 228.

"As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor." 6 C. J.S. Assignments, § 82, pp. 1136, 1137.

Hillgren as a party defendant in this suit, has this to say:

"If your Honor please, the main thing that I want to call to your attention is that this suit is really a suit in the alternative. Originally it would have been brought against Carl Hillgren alone, but we found out that there was this claim. Now, we bring this suit in the alternative. Really, if there is this outstanding license or right, then we have a claim against James (Hillgren). On the other hand, what we actually believe is that there is no outstanding right in Carl (Hillgren). James (Hillgren) gave us complete title, free and clear of all royalties." (From reporter's transcript of the proceedings of June 17th, 1948, p. 278.)

 The foregoing allegations of the complaint reflect the plaintiff's theory of the case against James Hillgren, and James Hillgren is not contesting the validity of the patent under the assignment and neither is he manufacturing doorknobs in infringment of the patent. The court is satisfied that this suit against James Hillgren is substantially for a breach of an assignment of the patent or a breach of a contract warranty, although the patent is incidentally and collaterally involved in the suit. Therefore, this court has no jurisdiction over James Hillgren under the patent laws of the United States; and the suit must be dismissed against him because of a lack of jurisdiction by reason of non-diversity of citizenship under Sec. 41 of Title 28 U.S. S.A., section 1332 of new title 28 U.S. C.A. [5, 6]

See also Couch Patents Co. v. Berman, 1910, 137 App.Div. 297, 121 N.Y.S. 978.

---

[5] Sec. 41 of Title 28 U.S.C.A. "The district courts shall have original jurisdiction as follows: Of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and * * * is between citizens of different States."

Sec. 1332 of new Title 28 U.S.C.A. "Diversity of citizenship; amount in controversy. (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States * * *."

[6] "The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy. For courts of a state may try questions of title, and may construe and enforce contracts relating to patents." (Cases cited) New Marshall Engine Company v. Marshall Engine Company, 223 U.S. 473, 35 S.Ct. 238, 239, L.Ed. 513.

This section (Sec. 41(7) [now § 1338] of Title 28 U.S.C.A.) "does not deprive the state courts of power to determine questions arising under the patent laws; for there is a clear distinction between a case and a question arising under those laws. The former arises when the plaintiff, in his opening pleading, sets up a right under the patent laws as a ground of recovery, and then the state courts have no jurisdiction. The latter may appear in the plea, answer, or testimony, and the state courts are authorized to decide them." Pratt v. Paris Gaslight & Coke Co., 1897, 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458.

"The federal courts have no jurisdiction where the controversy is not as to the construction, validity, or infringement of patents, that is, a controversy as to the title or ownership of them, not depending on the laws of the United States, but on general principles of equity growing out of the contracts. Montgomery Palace Stock Car Co. v. Street Stable-Car Line, C.C.1890, 43 F. 329, 330." 28 U.S.C.A. § 371, note 101.

"Other courts may entertain jurisdiction of suits for the enforcement of contracts founded upon patents." Morse Arms Mfg. Co. v. United States, 1880, 16 Ct.Cl. 296.

"Patent rights form the subject of two distinct classes of cases; the one for an infringement of a right, the other ex contractu. Jurisdiction of the former is exclusively in the Federal, of the latter exclusively in the State Courts." Gill v. United States, 1890, 25 Ct.Cl. 415, affirmed, 1896, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480.

"If a case arises under a contract, and is to enforce a covenant, the fact that it also involves a question under the patent laws will not make it a case arising under the patent laws so as to give the federal courts exclusive jurisdiction." New York Phonograph Co. v. Davega, 1908, 127 App.Div. 222, 111 N.Y.S. 363, 364.

552

■ "One cannot join a cause of action involving federal jurisdiction, with one in which the court has no jurisdiction in the absence of diversity of citizenship. Vose v. Roebuck Weather Strip Co., D.C., 210 F. 687; Geneva Furniture Co. v. Karpen, 238 U.S. 254, 259, 35 S.Ct. 788, 59 L.Ed. 1295; General Motors Corp. v. Rubsam Corp., 6 Cir., 65 F.2d 217, 218, Certiorari Denied 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593; Miller Rubber Co. v. Behrend, 2 Cir., 242 F. 515." Walker (Deller's) Section 448, page 1671.

■ "A suit of which the court would have jurisdiction because of the nature of the cause of action cannot be used as the means to bring into the equitable jurisdiction of this court a cause of action between the parties over which the court could not have jurisdiction unless diverse citizenship of the parties gave the United States Courts generally jurisdiction over the case." Vose v. Roebuck Weather Strip Co., D.C., 210 F. 687, 688.

"We therefore hold that so much of the bill as charges the defendants with contributory infringement of the plaintiff's letters patent, and seeks relief on that ground, presents a case arising under the patent laws of which the district court should have taken jurisdiction.

"But the other portions of the bill stand upon a different footing. The causes of action which they present—those not founded upon an unauthorized making, using, or selling of devices embodying the inventions of the plaintiff's patents, but resting only upon a breach of contractual obligations—do not arise under the patent laws. New Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513; Henry v. A. B. Dick Co., 224 U.S. 1, 14, 15, 32 S.Ct. 364, 56 L.Ed. 645, 650, 651, Ann.Cas. 1913D, 880. As to them no Federal court can take jurisdiction of a suit against the West Virginia Company without its consent, save in the district of its residence or that of the plaintiff (Judicial Code, Section 51 [now 28 U.S.C.A. § 1391]); and it hardly needs statement that the jurisdiction as limited and fixed by Congress cannot be enlarged or extended by uniting in a single suit causes of action of which the court is without jurisdiction with one of which it has jurisdiction. Upon this point the rule otherwise prevailing respecting the joinder of causes of action in suits in equity must, of course, yield to the jurisdictional statute. Thus, the West Virginia Company's objection, while not good as to the entire bill, was good as to the causes of action not arising under the patent laws. * * *" Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 259, 35 S.Ct. 788, 789, 59 L.Ed. 1295.

"Actions brought to enforce contracts between private parties, relevant to patent rights, are not actions arising under the patent laws of the United States of which the federal courts have exclusive jurisdiction, and therefore they may properly be brought in State courts." (citing 17 cases) Deller's Walker Section 413, p. 1603.

"It is a general rule that a suit * * * for any remedy in respect of a contract permitting use of the patent is not a suit under the patent laws of the United States, and cannot be maintained in a Federal court as such (citing 7 cases). * * *

"Where a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, or asks the aid of the court in declaring a forfeiture of the license, or in restoring an unclouded title to the patent, he does not give the Federal District Court jurisdiction of the cause as one arising under the patent laws." * * * Deller's Walker, Section 413, at pp. 1607, 1608, citing and quoting from Luckett v. Delpark, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703.

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 12(h) (2) of Federal Rules of Civil Procedure, 28 U.S.C.A.

■ Where, because of joinder of proper, though not indispensable, parties as defendants, there is no such diversity of citizenship as to give jurisdiction, District Court may permit dismissal of such parties.

and establish jurisdiction with retroactive effect. Jud. Code, § 274c, 28 U.S.C.A. § 399 [now § 1653]; Dollar S. S. Lines v. Merz, 9 Cir., 68 F.2d 594. The federal district court may, sua sponte, raise the question of jurisdiction at any stage of the proceedings, and this suit between the plaintiff and the defendant, James Hillgren, being between citizens of the same state, the court dismisses the case as to James Hillgren and retains jurisdiction as to Carl Hillgren.

*The suit against Carl Hillgren:*

Relative to the notice that Adolf Schoepe had at the time of the purchase of the patent in suit from James Hillgren on May 8, 1945, that Carl Hillgren had an oral license to manufacture Figure 1 therein, Schoepe testified on cross-examination as follows (Transcript p. 32):

Mr. Jamieson: So that you knew, before you purchased the patent in suit, that Mr. Carl Hillgren might make the lock known as the No. 60, didn't you? * * *

Mr. Schoepe: I would have to assume that he might. * * *

The court: Did you know that he might make the lock No. 60 before you purchased the patent?

Mr. Schoepe: Yes, if he so desired. * * *

Mr. Jamieson: The No. 60 lock that you referred to in your answer to a previous question embodies the invention of the patent in suit, No. 2,326,646, doesn't it?

Mr. Schoepe: Yes, to the best of my knowledge.

Mr. Jamieson: Did Mr. James Hillgren tell you anything else about the No. 60 lock, before you bought the patent in suit?

Mr. Schoepe: He told me that Carl had retained the dies for No. 60 locks.

Mr. Jamieson: So that you understood that Carl owned the dies for the No. 60 lock, before you purchased the patent in suit, is that correct?

Mr. Schoepe: Yes.

From the foregoing portion of the cross examination of Adolf Schoepe by Mr. Jamieson, it is clear to the court that at the time the Agreement of Purchase and Sale was entered into between James Hillgren and Anna V. Hillgren, as sellers, and Adolph Schoepe and Karl Reinhard, as buyers, dated May 8, 1945, Adolf Schoepe knew that Carl Hillgren had some interest, valid or invalid, in Figure 1 of the patent in suit sufficient to put him upon further inquiry. It is not necessary for this court to decide whether, under the Agreement, Schoepe and Reinhard were purchasing the subject matter of the Agreement subject to the interest of Carl Hillgren in Figure 1 or, because of warranties on the part of the sellers in the Agreement, James Hillgren should be compelled, as a matter of law, to give to the plaintiff corporation, by reason of the mesne assignments, a clear title to the patent in suit free and clear of any claim of Carl Hillgren in Figure 1 thereof, because this court feels it lacks jurisdiction to try these issues between plaintiff and James Hillgren on account of non-diversity of citizenship.

Counsel for defendant, Carl Hillgren, takes the position that when he bought the assets of James Hillgren in the Hillgren Manufacturing Company, on June 2, 1942, which antedated the Agreement of Purchase and Sale between James and Anna V. Hillgren as sellers and Schoepe and Reinhard as buyers of May 8, 1945, he acquired an oral license and a shop right in Figure 1 of the patent in suit, and the extract from cross-examination of Schoepe is referred to not only to show that he was put on inquiry to ascertain the interest of Carl Hillgren in said Figure 1 of patent, but also to corroborate the testimony of James Hillgren that Carl Hillgren was, at the time of dissolution of their partnership, to retain some interest in Figure 1 of the patent.

The plaintiff, however, takes the position that this alleged license between James and Carl Hillgren is not supported by any written contract and is, therefore, void under Section 1624 of the California Civil Code[7]; and, further, that a shop right must

---

[7] "The following contracts are invalid, unless the same, or some note or memorandum thereof is in writing and subscribed by the party to be charged or by his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof."

be between employer and employee, citing Crom v. Cement Gun Co., D.C., 46 F.Supp. 403, and contends that, there being some indication in the testimony that James Hillgren granted an oral license to his brother, Carl, this militates against the existence of a shop right, in other words, if Carl Hillgren had a shop right from his brother, James Hillgren, why should he need a license; and, conversely, if he had a license, why should he need a shop right?

 The court believes that there is sufficient evidence in this case to support the conclusion that Carl Hillgren obtained an express *oral* license as well as a shop right in Figure 1 of the patent in suit, and can see no inconsistency nor any irregularity in his having acquired the two, either concurrently or at different periods of time, for the reason that an express license, either written or oral, comes into existence by reason of the acts of the parties, and a shop right is created by operation of law, although, of course, in a shop right the parties themselves create the conditions from which the court concludes that a shop right has been created.[8]

 The plaintiff, however, is correct in that the oral license in this case is invalid under the California Statute of Frauds for the reason that the terms thereof were not to be fulfilled within one year from the making thereof, and the court so holds.[9]

 With respect to the shop right in this case, this court does not take the position that it can be acquired only from an employer and employee relationship, and, being created by operation of law, it is not within the statute of frauds.

 In Neon Signal Devices, Inc., v. Alpha-Claude Neon Corporation, D.C. W.D.Pa. 1931, D.C., 54 F.2d 793, at page 796, the court states the rule as follows:

"It may be conceded, under the authorities, that a shop right is a personal right, and does not pass by mere assignment; but on the other hand, it seems to be the established law that a shop right can and will pass where there is a complete succession to the entire business and good will of the licensee. Walker on Patents (6th Ed.) vol. 1, p. 437, says: 'Unassignable licenses may sometimes be invoked by persons who are

---

[8] "A license may be express or implied. An express license may be conferred by a written instrument or by parol. Robinson on Patents, Paragraph 809. 'An implied license may arise out of any circumstances which operate as an estoppel on the owner of the patent to prevent him from denying the rights claimed by the apparent licensee. * * * Any conduct by which the power of the patent induces the person who employs the invention to place himself in a situation where he must suffer injury, unless his right to practice the invention is conceded, will be regarded as implying such a right, and as estopping the owner of the patent from asserting his prohibitory powers in its defeat." Deforest Radio, etc. v. Radio Corporation, D.C., 9 F.2d 150. See also Neon Sign Devices v. Alpha-Claude Neon Corporation, D.C., 54 F.2d 793; General Motors Corporation v. Dailey, 6 Cir., 93 F.2d 938; Mueller v. Mueller, 3 Cir., 95 F. 155, and Routh v. Boyd, C.C., 51 F. 821.

[9] "Licenses may be written, or they may be oral. Jones v. Berger, C.C.1893, 58 F. 1006, 1007; Cook v. Sterling Electric Co., 7 Cir., 1907, 150 F. 766; Clancy v. Troy Belting & S. Co., 2 Cir.,

152 F. 188; St. Louis Street Flushing Mach. Co. v. Sanitary Street Flushing Mach. Co., 8 Cir., 178 F. 923; Bayer Co. v. Am. Shipbuilding Co., 6 Cir., 2 F.2d 1014; De Forrest R. T. & T. Co., v. Radio Corp. of America, D.C., 9 F.2d 150; Sun Oil Co. v. Red River Refining Co., Inc., 7 Cir., 1928, 29 F.2d 827, 828. The former have advantages over the latter, because they can be made exclusive, and can usually be proved with more ease and more certainty, and because the latter may sometimes be obnoxious to some State statute of frauds and be rendered non-enforceable, by being non-performable within one year from the dates of their origins. Buhl v. Stephens, C.C.1898, 84 F. 922. See Radio Corporation of America v. Cable Radio Tube Corporation, 2 Cir., 1933, 66 F.2d 778, certiorari denied 1934, 54 S.Ct. 373, 290 U.S. 703, 78 L.Ed. 604. Where a parol license to sell patented articles for four years was held void as within the statute of frauds, even though a contemporaneous written agreement contained option to terminate license on licensee's breach of contract, bankruptcy, insolvency or receivership." From Deller's Edition of Walker on Patents, Vol. II, p. 1940.

not exactly identical with the licensees. A railroad company which was formed by the consolidation of prior railroad companies, may invoke the licenses which were given to either of its constituent corporations; because the consolidated company is a successor rather than assignee of those companies.' The same author says at page 433: 'And the benefit of such an implied license will pass to the assigns or the successors of the employer, according to the particular circumstances which may justify such passage in particular cases, respectively. (Cases cited.)'

"A leading case on this subject is Lane & Bodley v. Locke, 150 U.S. 193, 14 S.Ct. 78, 79, 37 L.Ed. 1049. Locke sued Lane & Bodley, a corporation, for the infringement of Locke's patent. Defendant set up a shop right asserted to have passed to it from its predecessor, Lane & Bodley, a partnership. Locke had worked for the partnership, and the invention in suit had been made during such employment. He continued on the pay roll of the corporation after it had taken over the partnership business. He had permitted the defendant and its predecessor partnership to use the invention continuously. The Supreme Court held that, under these circumstances, the corporation succeeded to all the rights of the firm under the shop right which was found to have been created."

The preceding case, which deals exclusively with a shop right, has this to say also:

"The doctrine of the shop right is of equitable origin. The principle involved is that where an inventor or owner of an invention acquiesces in the use of the invention by another, particularly where he induces and assists in such use without demand for compensation or other notice of restriction of the right to continue, he will be deemed to have vested the user with an irrevocable, equitable license to use the invention. This situation between the inventor and employer might, of course, arise by mutual agreement, but generally the situation arises where the inventor induces his employer to proceed and not only fails to object to the use, but stands by or assists, while permitting his employer to assume expense and put himself in a position where it would be to his detriment to be compelled to relinquish further use of the invention. McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Solomons v. United States, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667; Gill v. United States, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480. * * *

"While it is generally true that questions of shop right arise between employer and employee, such right is not restricted alone to the case of an employer, as the doctrine is only a phase of the broad doctrine of estoppel. A shop right may arise through any permissive use of the invention, and particularly so where the inventor instigates such use and participates in it. Robinson on Patents, vol. 2, p. 641, explains and illustrates such a situation.

"The doctrine is broad enough to include a case of the permissive use of a person other than an employer. DeForest Radio v. United States, 273 U.S. 236, 47 S.Ct. 366, 367, 71 L.Ed. 625." Neon Signal Devices v. Alpha-Claude Neon Corporation, D.C., 54 F.2d 793, at page 794.[10]

Counsel for the defendants will prepare Findings of Fact and Conclusions of Law and a Judgment within ten days, in accordance with this Opinion, providing for costs of suit, for the signature of the court, approved as to form by counsel for the plaintiff.

---

[10] The shopright is discussed in an excellent note in 30 Columbia Law Review 1172. This note also repudiates the arbitrary distinction that there must be a master servant relationship, and affirms this court's opinion that the shopright is raised by the application of principles of equity, justice, and fairness. See also notes in 12 Minnesota Law Review 670, and 22 Notre Dame Law Review 429.